## CONTINENTAL SUPPLY CO. v. SINCLAIR OIL & GAS CO.

No. 15035—Opinion Filed Dec. 30, 1924.

Rehearing Denied April 7, 1925.

**1. Corporations—Agents— Scope of Authority.**

When a corporation holds out a person to the public as having the general authority to act for it in the particular business in which it is engaged, third persons may safely deal with the agent in the transaction of such business. But there is a limit to the authority of an agent, general or special, and the principal is not bound by his act outside of such limit.

**2. Principal and Agent — Existence and Scope of Agency—Question for Court.**

When the facts are undisputed and only one inference can reasonably be drawn from them, the court must determine whether they create an agency, and if so, with what powers and limitations.

**3. Same — Presumption as to Scope of Agency.**

Parties dealing with a known agent have a right to presume that the agency is general and not special, and the presumption is that one known to be an agent is acting within the scope of his authority.

**4. Same.**

In the absence of notice to the contrary, a person dealing with an admitted agent may presume that he is the general agent and that he is acting within the scope of his authority, the burden being upon the principal to show notice of any limitation upon the agent's authority.

**5. Trial—Instructions—Refusal of Requests Covered in Charge.**

The court is not required to give an instruction in the form requested by a litigant, where the matters therein contained have already been fully and fairly covered by the instructions given.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; George C. Crump, Assigned Judge.

Action by Sinclair Oil & Gas Company against the Continental Supply Company. From judgment in favor of plaintiff, defendant brings error. Affirmed.

Thompson, Barwise & Wharton, Thos. H. Owen, Wilbur J. Holleman, Bryan, Williams & Cave, and Randolph, Haver & Shirk, for plaintiff in error.

Edward H. Chandler, Summers Hardy, R. W. Garrett, and R. L. Imler, for defendant in error.

Opinion by PINKHAM, C. This action was instituted by the Sinclair Oil & Gas Company, a corporation, as plaintiff, against the Continental Supply Company, a corporation, as defendant, to recover the sum of $31,616.21, with interest thereon at the rate of 6 per cent. per annum from the 25th day of June, 1920, for oil well material sold by plaintiff to defendant.

The petition alleged in substance that on or about the 25th day of June, 1920, the plaintiff, through its agent, N. A. Spencer, sold and delivered to the defendant certain goods, wares, and merchandise; that the goods, wares and merchandise so sold and delivered by plaintiff have not been paid for and that the plaintiff is entitled to recover the amount sued for; that the sale and delivery of the pipe in controversy was made at the special instance and request of the defendant, "acting by and through John Sexton, who was the duly authorized agent of said defendant and fully authorized by said defendant so to do."

The Continental Supply Company denied under oath that it purchased the pipe and merchandise or any part thereof from the Sinclair Oil & Gas Company, and specifically denied that "John Sexton had any authority as agent or otherwise to purchase any goods, wares, and merchandise from the plaintiff, and denied that he had any authority as agent or otherwise to contract with plaintiff for the purchase of any goods, wares, and merchandise."

The case was tried to a jury and resulted in a verdict and judgment for the plaintiff. Motion for new trial was overruled. From the judgment defendant, Continental Supply Company, as plaintiff in error, prosecutes this appeal.

The Continental Supply Co. contends that the court erred: (1) In refusing to submit to the jury the extent of the authority of John Sexton, the agent, and whether the specific acts of John Sexton were within the scope of his authority; (2) the court erred in placing the burden of proof upon the principal, denying the acts of the agent were within the scope of the agent's authority; and (3) that the court erred in refusing to give defendant's requested instruction.

It is argued by counsel for the Continental Supply Company, in their brief, that the court below submitted the case to the jury on instructions which held that the purchase of this large amount of material and the opening of the account was within the scope of the authority of John Sexton, in spite of the fact that there were facts in evidence questioning and tending to disprove his authority to enter into such a contract or to open such an account, and in spite of the fact that the extent of his authority had been put in issue by the pleadings and evidence.

The evidence conclusively shows that the nature of the business which the Continental Supply Company was authorized to do was that of producing and dealing in well supplies and furnishing of various kinds and other articles of merchandise. Its headquarters and home office, where its books and records were kept and its general office maintained, was at St. Louis, Mo. In its application for a permit to transact business in the state of Texas, it stated that "the permit it desires is for the business of the purchase and sale of goods, wares, and merchandise." It carried on its business of purchase and sale of oil well supplies at Ft. Worth, Ranger, Eastland, Cisco, and Breckenridge, with headquarters at Ft. Worth, which were known as the North Texas district.

It appears that John Sexton had been in the service of the Continental Supply Company for some nine years, and that he was placed in charge of the North Texas district as district manager, with headquarters at Ft. Worth, and it clearly appears from the undisputed evidence that Sexton was the only official of the defendant company in the North Texas District, or in the state

of Texas at the time of the transactions involved.

It further appears that in the latter part of 1920, there was a shortage of oil well supplies in north Texas, and that the Continental Supply Company had a number of customers in that district who desired casing. and that John Sexton, as district manager of the defendant company, purchased from N. A. Spencer, who was the superintendent of stocks and materials owned by the plaintiff company, the supplies involved for the use of the customers of the Continental Supply Company.

It further appears that the Sinclair Oil & Gas Company had a large amount of oil well supplies stored in its warehouses at Ranger and Gorman, and desired to dispose. of some of this material for the reason that it had curtailed its drilling operations in the Ranger district, and that it authorized Mr. Spencer, its superintendent, to sell some of the same..

The evidence shows that Sexton, the defendant company's district manager in north Texas, purchased, from time to time, from the authorized agent of the plaintiff company. during a period of several months, a large quantity of pipe and caused the same to be shipped to its customers in the district over which he had been made manager of the Continental Supply Company.

It appears that orders for casing were given by Sexton to Spencer as the supplies were desired and the same were shipped in accordance with Mr. Sexton's directions. Invoices were made out by Mr. Spencer, the agent of the Sinclair Company, for each shipment, showing the material to be charged to the Continental Supply Company, and the original invoice was mailed to the Continental Supply Co. at Ft. Worth, where the headquarters of the defendant company for the North Texas District was located, and where a record was kept of the purchases and sales in that district.

It further appears that copies of these invoices or bills in each case were sent to the office of the Sinclair Oil & Gas Company at Ft. Worth, and a material transfer was made out at the Ranger office of the Sinclair Oil & Gas Company, showing the disposition of the material and this was also sent to the Ft. Worth office of the plaintiff company.

Mr. Sexton. as district manager of the defendant company, would send to Mr. Spencer, superintendent of materials of the plaintiff company. at Ranger, a cashier's check for the amount of the bill, which was made payable to the Sinclair Oil & Gas Company. Mr. Spencer would then forward the check, with a letter of remittance and explanation to the Ft. Worth office of the Sinclair Oil & Gas Company, where proper credit would be entered. It appears that this method of handling the transactions. and of making remittances by cashier's check was at Mr. Sexton's request.

It is conceded that John Sexton was district manager in charge of the business of the Continental Supply Company in north Texas, and there appears to be no conflict in the testimony as to the character of business carried on by the Continental Supply Company; which was the buying and selling of oil well supplies.

It further appears that the gross value of all the pipe delivered by the Sinclair Company to John Sexton and charged to the account of the Continental Supply Co. was $154,251.33, upon which account there has been credited the sum of $123,205.12, on account of payments forwarded by N. A. Spencer to the Sinclair Company in the form of cashier's checks and recovery of a portion of the pipe, leaving the balance sued for by the plaintiff company. payment of which was refused by the Continental Supply Co., upon the claim that it had never known of the fact that the Sinclair Oil & Gas Company, through N. A. Spencer, was selling pipe to John Sexton, its district manager, and charging the same to the Continental Supply Company.

In support of its first proposition, that the court erred in not submitting to the jury the extent and scope of John Sexton's authority, plaintiff in error cites a number of cases decided by this court and by the courts of other states, to the effect that where the question of agency is made an issue in the pleadings, and where the evidence offered upon the question of agency is conflicting, and there is any competent testimony raising a question of fact in the evidence. it is the duty of the court to submit to the jury the question whether the agency in fact existed. and also permit the jury to determine under proper instructions the nature of the agency and the extent of the agent's authority.

The authorities cited announce the rule stated by the defendant company. but an examination of these authorities relied upon as applicable to the instant case discloses that there was in those cases an issue of fact

in the testimony as to the existence of the agency, upon which conflicting evidence had been offered.

In Ricker Nat. Bank v. Stone, 21 Okla. 833, 97 Pac. 577, cited by the defendant company, an agent of the bank, with authority to employ men to look after cattle upon which the bank had a chattel mortgage, undertook to bind the bank by an agreement to pay an unliquidated sum to an employe from a former employer, merely to induce the employe to continue in the service of the bank for an undetermined length of time. It appears that the agent was not a general agent as was Sexton in the instant case, and, further, that the contract involved was clearly outside the scope of his authority.

In Madill Oil & Cotton Co. v. City Nat. Bank, 74 Okla. 322, 193 Pac. 878. cited by defendant company, the evidence was undisputed that Holaday, the agent and manager of the Oil & Cotton Company, had no authority to purchase cotton. The action was to recover a sum of money alleged to have been borrowed by the agent in the name of his principal. The Madill Oil & Cotton Company, was engaged in the manufacture of cotton seed, which was necessary in the conduct of its business, but it was clearly outside of his authority to buy cotton. This case also involved the proposition that an agent with authority to buy did not thereby possess the authority to borrow money in the name of his principal.

The distinction to be observed in the facts of the cases cited by the defendant company and the facts in the instant case is clearly pointed out in the case of Gates Iron Works Co. v. Denver Engineering Works (Colo.) 67 Pac 173. The Gates Iron Works Company was engaged in the manufacture of mining machinery with headquarters at Chicago, Ill. One Burkey was its agent in Denver, and Burkey purchased from plaintiff certain merchandise. Judgment in favor of plaintiff was reversed. The Gates Iron Works Company was not engaged in the business of buying merchandise and the authority of Burkey as general agent was merely to sell its manufactured product, and the court found that plaintiff knew these facts.

In the opinion the court said, however:

"Where a person holds out another to the public as having a general authority to act for him in the particular business in which he is engaged, third persons may safely deal with the agent in the transaction of such business; but there is a limit to the authority of an agent, general or special, and the principal is not bound by his actions outside of such limit, no matter how extensive the authority of an agent may be in the transaction of his business. It is still confined to that business and his acts outside of the boundary by which the business is circumscribed would not bind his principal."

It is beyond dispute that John Sexton openly and notoriously, for a period of at least two years, including the months during which the transactions involved herein took place, acted as the general agent of the defendant company in the North Texas district, with the knowledge and approval of that company, and that he was the only official representing and acting for the defendant in that district.

The vice president of the Continental Supply Company testified that John Sexton was the district manager of the company during the months of May, June, July, and up until October, 1920. The secretary of the Continental Supply Company testified that during the year 1920, up to October, 1920, John Sexton was district manager in North Texas of the defendant company. Mr. Sexton, himself, testified that he was in charge of the business of the Continental Supply Company at Ft. Worth, Tex., during the year 1920, and up until the 1st day of November of that year, that he was district manager of the defendant company, and that it was his duty to look after the interests of the business in Ft. Worth, and to ascertain the wants of the defendant company's customers and supply them if he could: that he wrote the Sinclair Company letters making remittances on the stationery of the Continental Supply Company and signed the Continental Supply Company's name to nearly all of the letters.

Mr. Spencer, superintendent of materials for the plaintiff company, testified that he understood that in June, July. August, September, and October, 1920, John Sexton was district manager of the Continental Supply Company, and that his, Sexton's, headquarters were at Ft. Worth, Tex.

The principal is bound by the apparent, as well as by actual or express authority, given its general agent where third persons have in good faith acted and relied thereon. National Surety Co. v. Miozrany, 53 Okla. 322  156 Pac. 651.

In 2 C. J. 961, sec. 731, it is said:

"But whether or not there is any evidence tending to prove the existence of an agency is for the court to determine, and if there is none or if it is so slight that a finding of the existence of the agency would not be sustained, the question should be disposed of by the court alone and should not be submitted to the jury; nor should the ques-

tion be submitted to them where the facts relating to the existence of the agency are undisputed and are such that only one reasonable conclusion can be drawn therefrom, but even where the facts are undisputed, if different conclusions can reasonably be drawn, the question should be submitted to the jury."

In Pickens Co. v. Thomas (Ga.) 21 A. L. R. 1438, the court said:

"Unless specially restricted the authority and power of a general manager of a corporation are co-extensive with the powers of the corporation itself, and he has authority to do any act on its behalf which is usual and necessary in the ordinary course of the company's business. Georgia Mil. Acad. v. Estill, 77 Ga. 409; Raleigh & G. R. Co. v. Pullman Co., 122 Ga. 700, 50 S. E. 1008. If a person imposes upon another the duties and responsibilities involving the management and control of a business, such person will be presumed to have authority to represent his employer in any matter within the scope of the business; and this rule applies peculiarly to corporations which act only through their officers and agents."

In Thompson on Corporations (2d Ed.) 647, sec. 1576, it is said:

"The governing principle with reference to the general power of a manager is that where he has the actual charge and management of the business by appointment of or with knowledge of the directors, the corporation will be bound by his acts and contracts, which are necessary or incident in the course of the business without other evidence of actual authority. The general manager represents a corporation in all matters falling within the scope of the powers actually conferred, or which he is held out by the corporation to possess. * * * He has power to do any act necessary to carry on the ordinary business of the corporation. * * * The reason for the rule is that the corporation, by the very fact of the appointment of such manager, holds him out to the public as the person authorized to bind it by contracts necessary in the prosecution of its business. * * *"

Where a material fact is conclusively shown by undisputed evidence, then the giving of an instruction which assumes that such fact has been established is not error. Atchison, T. & S. F. Ry. Co. v. Henderson, 27 Okla. 560, 112 Pac. 986; Bleecker v. Miller, 40 Okla. 374, 138 Pac. 809.

"And so where the facts are undisputed and only one inference can reasonably be drawn from them, the court must determine whether they create an agency and if so, with what powers and limitations. * * *" 1 Mechem Agency, 213, sec. 295; Washington Gas Light Co. v. Lansden, 172 U. S. 534, 42 L. Ed. 543; N. Y. Central & H. R. Ry. Co. v. U. S., 212 U. S. 481, 53 L. Ed. 621.

We conclude there was no issue in the testimony upon the question of agency; that the testimony established the facts of agency and the character thereof, and therefore the court did not err in instructing the jury that John Sexton, as district manager for the Continental Supply Company, had the authority to purchase the merchandise involved in the action.

It is next contended the court erred in giving instruction No. 8. The first part of this instruction is to the effect that in dealing with the district manager of the defendant corporation, John Sexton, the plaintiff, and its agents were justified in presuming that Sexton had authority to purchase the merchandise involved and were also justified in presuming that he was in fact purchasing said merchandise on account and for the benefit of the Continental Supply Company, and the burden of rebutting such presumption would be upon the defendant.

We have heretofore concluded that the testimony clearly established the facts of agency and the character of the agency, and that the court did not err in instructing the jury that John Sexton was the general agent of the defendant and that he had authority to purchase the pipe in question.

The latter part of the instruction complained of had reference to testimony on the part of the defendant company to the effect that Sexton had submitted a list of the pipe to the Continental Supply Company, and had been informed by it that it did not care to purchase the pipe and that Sexton communicated this information to N. A. Spencer, prior to the time the pipe was sold and delivered.

The objection to this latter part of the instruction is that the court placed the burden upon the Continental Supply Company to show by a preponderance of the testimony that Sexton was advised that the Continental Supply Company was not interested in buying pipe and that Sexton communicated this information to Spencer, plaintiff's agent.

It is clear, we think, that the plaintiff company had a right to presume that the manager of the Continental Supply Company was acting within the scope of his authority, and that it would not be bound by any private instructions limiting his authority with reference to his purchase of the pipe, unless notice or knowledge was brought home to the plaintiff company.

In Midland Savings & Loan Co. v. Sutton, 30 Okla. 448, 120 Pac. 1007, the court said:

"Parties dealing with a known agent have a right to presume that the agency is general and not special, and the presumption is that one known to be an agent is acting within the scope of his authority."

In Daniel v. Pappas, 93 Okla. 165, 220 Pac. 355, the fourth paragraph of the syllabus is as follows:

"Where an agent is held out as having the authority of a general agent, any private instructions or limitations upon his authority not communicated or known to third persons dealing with such agent will not be binding upon such third persons where the agent oversteps such limitations."

"As to third persons, such secret instructions are no restriction upon the apparent authority of a general agent, for persons dealing with an agent are, in the absence of special proof to the contrary, presumed to know only his general authority and have a right to presume that the principal intended him to employ the usual and appropriate means and do the acts that belonged to the particular character of employment, or that have been previously employed by such agent irrespective of any private instructions the principal may have thought it best to give to the agent." 2 C. J. 566, sec. 209.

In support of this rule, cases are cited from nearly every state in the Union. See, also, Mechem, Agency (2nd Ed.) vol. 1, 215, sec. 298.

In Harvey Chalmers & Son v. J. R. and J. A. Bowen (Sup. Ark.) 164 S. W. 1131, the fifth paragraph of the syllabus is as follows:

"In the absence of notice to the contrary a person dealing with an admitted agent may presume that he is the general agent, and that he is acting within the scope of his authority, the burden being upon the principal to show notice of any limitation upon the agent's authority."

See, also, to the same effect O'Daniel et ux. v. Streeby (Wash.) 137 Pac. 1025; and Sun Print. & Pub. Ass'n v. Moore, 183 U. S. 642, 46 L. Ed. 366.

In the light of these authorities the instruction complained of constituted a statement of law applicable to the facts.

It is further contended that the court erred in refusing to give defendant's requested instruction No. 1, which was as follows:

"The knowledge of N. A. Spencer was the knowledge of the plaintiff, Sinclair Oil & Gas Company, because it must use that knowledge to make its case and if you find and believe from the evidence that John Sexton was not in fact acting for and on behalf of the defendant, the Continental Supply Company and that Spencer knew it, then your verdict must be for the defendant."

The court instructed the jury in one of its instructions that the knowledge of N. A. Spencer was the knowledge of the plaintiff, Sinclair Oil & Gas Company, which covered the first proposition of law contained in the requested instruction.

In another instruction given by the court, the second proposition embraced in the requested instruction was given in the following language:

"You are further instructed that it is the theory of the defendant that N. A. Spencer, acting for and on behalf of the plaintiff, and as agent therefor, did not sell the pipe to the defendant by or through its agent, John Sexton, but that the sale of the pipe, if any, was made by N. A. Spencer to other parties than the defendant, and in this connection you are instructed that if you believe from the evidence that N. A. Spencer sold the merchandise described in plaintiff's petition to John Sexton, C. Rosenfield, or other parties, then in that event your verdict should be for the defendant."

It is well settled by the decisions in this state that the court is not required to give an instruction in the form requested by a litigant where the matters therein contained have already been fully and fairly covered by the instructions given. Citizens Bank of Headrick v. Citizens Bank of Altus, 75 Okla. 225, 182 Pac. 657; Holmes v. Halstid, 76 Okla. 31, 183 Pac. 969; Lusk v. Bandy, 76 Okla. 108, 182 Pac. 703.

It is finally urged that the court erred in refusing to give defendant's requested instruction No. 2, to the effect that the sale of cars of material by N. A. Spencer for the plaintiff were separate and distinct transactions as to each car, and that plaintiff must prove that the defendant, through John Sexton, purchased each of the cars of material that were not paid for.

We think it sufficient to say that it clearly appears that the court repeatedly stated to the jury in its instructions that the burden was upon the plaintiff to show by a preponderance of the testimony that the defendant, through John Sexton, purchased the merchandise mentioned in its petition. Attached to plaintiff's petition as Exhibit "A," and made a part of said petition, appears a detailed statement containing a description of each car of merchandise in the account, showing the date of its sale and itemized description of the property sold, together with the amount thereof. From this statement it appears that a number of cars were

sold on the same date; and this occurred on several separate dates. The fact therefore does not appear that each car was a separate and distinct transaction.

The instruction given clearly placed the burden upon the plaintiff to prove that the defendant, through John Sexton, purchased each car of material that was not paid for, and plaintiff assumed this burden and proved to the satisfaction of the jury that the defendant, through its agent, Sexton, purchased each car of said merchandise.

From an examination of the entire record we conclude that the judgment should not be disturbed, and that the same should be affirmed.

By the Court: It is so ordered.

Note:—See under (1) 14A C. J. p. 349; (2) 2 C. J. pp. 961, 964; (3) 2 C. J. pp. 920, 921; (4) 2 C. J. p. 926; (5) 2 C. J. p. 967, 38 Cyc. p. 1711.