## SOUTHERN SURETY CO. v. GILKEY-DUFF HARDWARE CO.

No. 22154.   Sept. 26, 1933.

Rehearing Denied Oct. 31, 1933.

Allen, Underwood & Canterbury, for plaintiff in error.

J. F. Thomas, for defendant in error.

BUSBY, J. This action was commenced in the district court of Comanche county, Okla., on the 5th day of June, 1929, by the Gilkey-Duff Hardware Company (defendant in error in this court) against D. T. Allen and the Southern Surety Company, as defendants. (Southern Surety Company is plaintiff in error herein.)

The cause was tried to the court on April 1, 1930, and a money judgment for the sum of $768.64, with interest at the rate of six per cent. per annum from the 3rd day of May, 1929, was rendered in favor of the plaintiff and against the Southern Surety Company. That company has brought the cause to this court on appeal. The parties will be referred to as they appeared in the court below.

The facts in this case are as follows: In September, 1928, the defendant D. T. Allen entered into a contract with the State Highway Commission whereby he agreed to construct a five-mile section of State Highway No. 8, located in Comanche county, immediately south of the county line between Comanche and Caddo counties. This was designated as state highway project No. 446-C. In October of 1928, the defendant agreed in another contract to construct a four-mile section of the same highway located in Caddo county immediately north of the project No. 446-C. This was known as state aid project No. 446-E. In compliance with the requirement of section 7486, C. O. S. 1921 [O. S. 1931, sec. 10983], a statutory bond was executed in connection with each of the above projects to secure the payment of the indebtedness incurred for labor or material furnished in making the public improvements referred to. Both of the bonds were executed by the defendant D. T. Allen as principal and Southern Surety Company as surety. The same principal and surety likewise executed a "Contract Construction Bond" in connection with each of the above-mentioned projects. The defendant D. T. Allen established a camp for the purpose of carrying on the construction work on the two projects, constructing both projects from the same camp.

About December 5, 1928, the defendant Allen became involved in financial difficulties which, according to his testimony, was brought about largely by an unsatisfactory construction contract in connection with a project at Henryetta, Okla., in which the Southern Surety Company was also interested as the surety of Allen on his bond. The difficulty arising out of the Henryetta project is important only as an explanation of the financial difficulty and of the conduct of Allen concerning the projects on State Highway No. 8.

Defendant Allen advised the Southern

Surety Company of his financial difficulties and informed that company that he would be unable to carry out his contract on the various projects. On December 5, 1928, that company, acting through its general manager in this state, a Mr. Franklin, procured from the contractor, Allen, an assignment of the money due and to become due him from the State Highway Department on the contract which Allen had executed. A plan was then adopted whereby the construction work on state highway projects Nos. 446-C and 446-E was completed. Under this plan the defendant D. T. Allen continued to supervise the construction work. Whether or not he acted in his own behalf or as an agent for the Southern Surety Company is one of the principal issues in this case, and the details of the plan, as well as the agreement between Allen and the Southern Surety Company, will be more fully treated in connection with the discussion of that issue.

After the assignment above referred to, the plaintiff, Gilkey-Duff Hardware Company, the Parkinson Motor Company of Lawton, and A. D. Sly, who was engaged in business under the trade name of Motor Machine Company, each furnished supplies and material and performed services on account at the request of D. T. Allen and the men under his supervision. The work, labor, material, and supplies furnished by each of the above-mentioned business concerns were necessary to complete the construction of the project, although a portion of it was not within the liability of the Southern Surety Company as created by the bond executed by it.

The claims of the Parkinson Motor Company and A. D. Sly were assigned to the plaintiff, which combined them with its own in this action. The petition is divided into six parts, each of which is designated therein as a separate cause of action. A more accurate classification would divide the action into three causes of action, each cause of action being subdivided into two counts.

The first "cause of action" concerns the Gilkey-Duff Hardware Company account, and proceeds against the defendant D. T. Allen and the Southern Surety Company on the theory that D. T. Allen was the principal debtor and the Southern Surety Company was liable by virtue of the statutory bond executed by it. The second cause of action, or, more properly speaking, the second count of the first cause of action, proceeds upon the theory that the Southern

Surety Company took over the completion of the projects on December 5, 1928, and is therefore liable as a principal obligor to pay the account of the plaintiff. It is appropriate, when there is some uncertainty as to the ground of recovery, that the plaintiff assert his claim in two or more distinct counts. Mellon v. Fulton, 22 Okla. 636, 98 P. 911; Roxanna Pet. Co. v. Covington State Bank, 98 Okla. 266, 225 P. 375. See, also, 21 R. C. L. 470, par. 35; 49 C. J. 158, par. 174; Bancroft on Pleadings, vol. 1, p. 175.

The third and fourth causes of action concern the assigned account of the Parkinson Motor Company, the right to recover being thereby presented to the court on the same two theories that are presented in the first and second causes of action in connection with the Gilkey-Duff Hardware Company. Likewise the assigned account of A. D. Sly is presented by the fifth and sixth causes of action. Thus the three accounts concerned in this action are presented in the first, third, and fifth causes of action on the theory that the defendant D. T. Allen is the principal debtor, and that the defendant Southern Surety Company is liable on the statutory bond executed by it, and the same three accounts are presented in the second, fourth, and sixth "causes of action" on the theory that the completion of the project was taken over by the Southern Surety Company on December 5, 1928, and that that company was liable as principal debtor on accounts thereafter created.

In its answer the Southern Surety Company admitted its corporate existence, denied generally the allegations and statements in the petition, and specifically denied other allegations appearing therein. When the cause was tried on the issues framed by the pleadings, the court in compliance with the defendant's request stated separately its conclusions of fact and law as required by the provisions of section 556, C. O. S. 1921 [O. S. 1931, sec. 374]. An examination of the findings of fact and conclusions of law made by the trial court shows that it concluded that after the assignment was executed by D. T. Allen on December 5, 1928, the defendant Southern Surety Company took over the completion of the projects in question, and that D. T. Allen thereafter acted as superintendent, and that on all accounts which were incurred subsequent to the assignments the defendant Southern Surety Company was liable as principal thereon. The court also decided that all the indebtedness concerned

in the three different accounts involved in this action was created subsequently to the date last above mentioned. In accordance with this last conclusion the court rendered judgment in favor of the plaintiff and against the defendant Southern Surety Company for the amount prayed for.

In presenting its appeal to this court the Southern Surety Company concedes that the accounts upon which the action was based are correct. It seeks to evade liability thereon, however, on the theory that the trial court erred in deciding that it, the Southern Surety Company, took over the projects for the purpose of completing the same. It contends that the projects were, in fact, completed by the defendant D. T. Allen, and that the liability of the Southern Surety Company, if any, arose solely out of the bond executed by it in connection with each of the projects. It contends, further, that it is not liable as surety by virtue of these bonds for the reason that the various items covered by the three accounts concerned in this action were used indiscriminately upon the two state aid projects, Nos. 446-C and 446-E, and that, inasmuch as each of these projects was covered by a separate bond, it was essential, in order for the plaintiff to recover at all, that the plaintiff establish definitely on which particular project each item on each of the accounts was used. The several assignments of error in the petition in error herein filed by the Southern Surety Company are grouped in its brief under three propositions which read:

"Proposition No. 1.

"Agency is never presumed; and before one party can hold another liable on the theory that some third person acted as agent for and on behalf of such other party, all facts necessary to support such agency must be alleged and proved by the party seeking to establish the agency.

"Proposition No. 2.

"A surety upon the statutory bond conditioned as required by law for the payment of all labor and materials used or consumed in the construction of public work and upon a bond to complete the work has an equitable lien upon the estimates payable to the contractor; such equitable lien arises at the time of the execution of the bond. Application of the proceeds and estimates from the contract to the reduction of the surety's liability at the direction of the surety is a mere exercise of an existing right and does not constitute the surety directly liable for all debts of the contractor in connection with the work.

"Proposition No. 3.

"A surety may not be held beyond the express terms of its contract and a contract of suretyship should be strictly construed in that having determined the intelligible meaning of a contract of suretyship, it will be construed and applied strictly in favor of the surety and without allowance of an implication against it and especially that the obligation of the surety must not be extended to any other subject, to any other person or any other period of time than as is expressed or necessarily included in it."

The first two specifications are relied upon by the defendant to reverse the judgment rendered by the trial court. The third proposition is incorporated in the brief of the defendant to prevent a judgment being rendered against it on the theory that it is liable as a surety in the event this court should decide that it is not liable as principal (the trial court having entered an alternative conclusion deciding that the defendant Southern Surety Company would be liable for a portion of the indebtedness by virtue of the statutory bonds executed by it if this court should decide that it is not properly charged therewith as principal obligor). Unless one or both of the first two propositions are well taken, the third need not be considered.

It is asserted in the first specification referred to that it is essential to both allege and prove agency. We will first consider the question of pleading involving the sufficiency and necessity of an allegation of agency in this case. The second, fourth, and sixth "causes of action" in the plaintiff's petition each contain the following statements:

"And the plaintiff alleges that each and every item of said goods, wares, merchandise as itemized herein so sold and delivered to the defendant, D. T. Allen, was in fact delivered to and received by the defendant, Southern Surety Company. * * *"

This is not a model averment or pleading and does not contain a direct allegation that the defendant Allen in receiving the goods, wares, and merchandise was acting for and received the same as the agent of the Southern Surety Company. However, it conveys that meaning and is susceptible of that interpretation. It is not the policy of this court to place a strained or narrow construction on pleadings, since the law requires the adoption of a liberal interpretation. Section 294, C. O. S. 1921 [O. S. 1931, sec. 227]. However, it is not necessary that we decide in this case that

the inferential allegation of an agency is sufficiently definite and positive to require a denial under oath in order to create an issue, assuming that this allegation is insufficient to be treated as an averment of the existence of an agency. It will be observed that the statement above quoted from the pleadings directly charges that the goods were delivered to and received by the Southern Surety Company. Under the law of pleading, such an allegation is sufficient even though the proof may disclose that the principal at the time of the transaction complained of was acting through an agent, the rule being that in an action against a principal upon a contract entered into by an agent, it is sufficient to allege that the contract was made by the principal without disclosing in the pleadings the fact of agency. Interior Warehouse Co. v. Dunn (Ore.) 157 P. 806; St. Louis & S. F. R. Co. v. Leger Mill Co., 53 Okla. 127, 155 P. 599. See, also, 2 C. J. 904, par. 610; Bancroft's Code Pleading, vol. 2, p. 1177, par. 821.

Examined in the light of the foregoing rule, the allegations in the petition of the plaintiff in this case are sufficiently comprehensive to enable the plaintiff to offer proof to establish that D. T. Allen, in creating the indebtedness on which this allegation was based, was acting as the agent of the Southern Surety Company. The petition of the plaintiff also alleges, and the proof establishes, that the contract construction bonds executed by the defendant D. T. Allen as principal and the Southern Surety Company as surety to the state of Oklahoma, for the purpose of insuring the completion of the construction of the projects, each contain provisions to the effect that in the event of default by the contractor, D. T. Allen, the surety should have the right to take over the projects for the purpose of completion. The trial court found on the proof offered that the defendant Southern Surety Company had taken over the completion of the projects subsequent to December 5, 1928. The obvious purpose of the above-mentioned provision in the contract construction bond was to enable the defendant Southern Surety Company to take over the projects for the completion in case of default by the contractor in order to protect itself against loss or damages under bond. By virtue of this provision in the bond, they might rightfully, upon default, take charge of the projects for the purpose of completion even though the contractor should object. It is equally apparent that, regardless of whether

the right accrued to take the project over under the provisions of the bond or not, the parties could, by a mutual agreement between themselves subsequently made, accomplish the same result. The question, then, is whether the finding of the trial court that the Southern Surety Company had taken over the completion of the projects involved in this action and thereby rendered itself liable as principal obligor for subsequent indebtedness incurred in connection with the construction work thereon. is reasonably supported by competent evidence.

The law raises no presumption of agency, and when the same is in issue, the burden of establishing its existence is upon the party who is relying thereon to establish his claim or demand. Whitney v. Lowe, 137 Okla. 1, 278 P. 1096 (and authorities cited therein). Generally its existence cannot be established by the declaration or statement of the agent made out of court. Wagner v. Davidson, 127 Okla. 199, 260 P. 37; Winnebago State Bank v. Hall 127 Okla. 215, 260 P. 497; Ramsey v. Thompson, 127 Okla. 257. 260 P. 773.

However, in this case, D. T. Allen, the asserted agent, testified at the trial of the cause as a witness for the plaintiff. and his testimony was competent to establish the fact that during the transaction mentioned herein he was acting as an agent for the Southern Surety Company. Mitchell v. McCollister, 93 Okla. 203, 220 P. 621; Citizens' Bank of Gans v. Mabray, 90 Okla. 63, 215 P. 1067. When the facts relied upon to establish the existence of the agency are undisputed and conflicting inferences cannot be drawn therefrom, the question of whether or not an agency existed is one of law for the court. Continental Supply Co. v. Sinclair Oil & Gas Co., 109 Okla. 178. 235 P. 471. Conversely, when the facts are conflicting or conflicting inferences may be drawn therefrom, and there is competent evidence which directly or by proper inference tends to establish the existence of the agency, the question presented is one of fact and should be determined as such. Dandois v. Raines, 115 Okla. 88, 241 P. 1099; Lewis B. Wood Realty Co. v. Greer, 100 Okla. 276, 229 P. 232.

The soundness of the lower court's decision on the question under consideration requires a brief of the evidence as disclosed by the record, viewed in the light of the foregoing recognized rules of law.

There is no dispute between the parties that the construction work on state high-

way projects Nos. 446-C and 446-E was performed under the personal supervision of the defendant D. T. Allen. It is likewise apparent that this construction work was constructed from one camp and carried on as though it were one project, and the labor and materials procured for the purpose of completing both of the projects were not allocated between the two. No effort was made by Allen or those working with him to keep any record of the particular material that went into either of the two jobs. It is equally obvious that, subsequent to December 5, 1928, when the assignments were made, and perhaps previous to that time, the Southern Surety Company was fully aware of this method of conducting construction work on the two projects. The disputed question is, Was Allen acting as a superintendent for the Southern Surety Company subsequent to December 5, 1928, or was he acting in his own behalf in carrying on the construction work? The answer to this question depends principally upon the terms of the agreement that was made between Allen and the Southern Surety Company at the time the assignments were executed. Unfortunately the parties, though undoubtedly experienced in business affairs, did not enter into a comprehensive and definite contract, either written or oral. Their agreements, which are based upon oral conversations, leave a great deal to conjecture, and apparently in this case a great deal was taken for granted, without any discussion whatever. Such a manner of conducting business sometimes renders it difficult for courts to determine accurately the rights of the parties.

At stated above, when D. T. Allen became involved in financial difficulties he went to Tulsa, Okla., advised a Mr. Franklin, the representative of the Southern Surety Company, of his financial condition, and informed Mr. Franklin that he was unable to "carry on". An assignment was then made whereby the money due and to become due under the contracts between Allen and the State Highway Department was assigned to the Southern Surety Company. That company then established in a Tulsa bank an account referred to on the trial as a "joint control account," out of which money used in connection with the completion of the construction work was paid. The Southern Surety Company deposited the necessary funds to the credit of this account. D. T. Allen was deprived of all right to draw checks against the account, and the checks were payable when they had been countersigned by a Mr. Amme as attorney and agent for the Southern Surety Company. The checks were also to be signed by a Mr. Crump. Previous to the assignments above mentioned, Mr. Crump had been the bookkeeper for the contractor, Mr. Allen. He continued to keep books under the new arrangement, and also assumed the duties of signing the check on the "joint control account". The Southern Surety Company and Allen in their discussion agreed upon him as a proper party to exercise this authority. The pay rolls for the construction work were prepared by Mr. Crump and forwarded to Mr. Amme for his investigation and approval. In discussing the proposed plan of operation, neither Mr. Allen nor Mr. Franklin mentioned possible profits or the disposition thereof. Failure to discuss this feature was possibly due to the fact that as between those parties it was very unlikely that any profits would accrue, the indebtedness of Allen being more than any profit that might reasonably be anticipated. It was agreed that Allen should be paid out of the joint control account the sum of $400 per month. It is contended by the Southern Surety Company that the money advanced to this account, inclusive of the $400 per month which Allen received, constituted a loan, and in support of this they point to the testimony of their agent, Franklin, who testified that he told Mr. Allen he would loan him the $400 per month. The plaintiff contends that it was a salary and points to the testimony of the defendant Allen, who as a witness testified that in the conversation between himself and Franklin no statement was ever made to the effect that the $400 was to be a loan. Our attention is likewise directed to the fact that Allen's name was carried on the pay rolls along with other employees, and that the $400 paid to him each month was thus identified as a salary paid in connection with the construction work. It is also pointed out that the proposed pay rolls as made up were submitted to, investigated, and approved by Mr. Amme. The evidence is thus conflicting as to whether these $400 monthly payments to Allen were for salary or loan of money. If it was a loan of money, it was consistent with the theory of the Southern Surety Company that the construction work was still being carried on by Allen. If, on the other hand, it was, in fact, a salary, it supported the plaintiff's theory that D. T. Allen was acting as superintendent for the Southern Surety Company.

It should be noted also that, in accordance with the assignments made, the State Highway Department paid to the defendant Southern Surety Company all of the money which became due under the contract or bond on the projects being constructed.

We deem it unnecessary to burden this opinion with a detailed discussion and consideration of other evidentiary facts which appear in the record, other than to observe that when considered as a whole there is some conflict in the testimony and more conflict in the inferences that may be drawn therefrom. We are unable to say, after a careful examination of the record, that the decision of the trial court, holding that the Southern Surety Company, by virtue of the clause in its bond and pursuant to an agreement between itself and Allen, had taken over the construction of the state aid projects Nos. 446-C and 446-E, and was therefore principal debtor on the indebtedness subsequently incurred, is not supported by the evidence.

The defendant urges in its second proposition that the surety on a statutory bond intended to secure the payment of labor and material bills is entitled as a matter of law to an equitable lien on the estimates payable to the contractor, and that the application of the proceeds of the contract to the reduction of the surety's liability does not render the surety directly liable for all of the debts of the contractor. In support of this proposition a very respectable line of authorities is cited. However, the trial court did not decide that the liability of the defendant arose solely out of the application of the proceeds or the exercise of an equitable lien, but, as we have already observed, proceeded upon the theory that the surety company has taken over the contract of Allen for the purpose of completion pursuant to an agreement and understanding between the company and Allen. Assuming without deciding that the second proposition of the defendant correctly states the law, it does not follow that a contractor and a surety may not by agreement adopt a plan for completion of the unfinished projects whereby the surety company completes the construction thereof and is principal debtor on the indebtedness incurred in finishing the projects under construction. It therefore follows that, even though correct in their statement of law incorporated in this second proposition, they are not thereby relieved of liability.

Owing to the view that we have taken on the first and second propositions, it is unnecessary to discuss the third proposition urged by the defendant for the reasons already set forth. The judgment of the trial court should be, and is hereby, affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur.