## BROWN v. SAYLOR.

No. 32701.   Dec. 19, 1950.

*228 P. 2d 187.*

G. O. Wallace, Wewoka, for plaintiff in error.

Homer H. Bishop, Seminole, and A. C. Kidd, Wewoka, for defendant in error.

LUTTRELL, J.  This is an action for damages for personal injuries, brought by plaintiff R. M. Saylor against Lorenzo C. Brown, d/b/a Brownie's New Method Potato Chip Company, and Elmer Cochran.  The trial court overruled the motion for an instructed verdict filed by the defendants at the close of all the evidence, and submitted the case of a jury, which returned a verdict in favor of plaintiff and against both defendants.  The defendant Brown alone appeals.

The evidence established that plaintiff received an injury on November 2, 1944, during an altercation with the defendant Cochran over a display rack for potato chips originally furnished by the defendant Brown to the Park-In Food Market in Wewoka.  The decisive question presented is whether at the time plaintiff was injured the defendant Cochran was the agent or servant of the defendant Brown.

From the evidence it appears that the defendant Brown lived in Oklahoma City, where he manufactured potato chips; that originally his nephew, who was admittedly his employee and who worked part of the time in the potato chip factory, delivered potato chips for the defendant Brown in various towns in the state, including Wewoka, and orally contracted to sell potato chips to the Park-In Food Market, which was owned and operated by Mr. and Mrs.

Chaney, and that plaintiff was employed in the Park-In Food Market. It further appears that the nephew of defendant Brown was called to the Army, and that thereafter the defendant Cochran served the route which had theretofore been handled by the nephew of Brown; that on November 2, 1944, Cochran was advised by Mrs. Chaney that they no longer desired to purchase Brownie Potato Chips, and he thereupon attempted to remove a wooden rack upon which the potato chips had been displayed; that plaintiff refused to let him take the rack unless he paid for certain potato chips which had spoiled; that Cochran refused to pay for the potato chips unless the sacks in which they had been contained were delivered to him so that he could be reimbursed therefor by defendant Brown, and that in the resulting altercation plaintiff was injured.

Defendant Brown on appeal contends that the undisputed evidence discloses that Cochran was what is known as a "wagon jobber", one who bought potato chips for a certain price at the factory and resold them to customers. Plaintiff contends that the evidence sufficiently showed that Cochran was the agent and servant of defendant Brown, and the trial court so held when he overruled the motion for directed verdict and submitted the case to the jury. We are unable to agree with the contention of plaintiff, and think that the trial court erred in refusing to sustain the defendant Brown's motion for a directed verdict.

The principal fact relied upon by plaintiff as establishing Cochran's agency for Brown was that Brown owned the panel truck used by Cochran to deliver the potato chips to the various customers he served. Plaintiff contends that it is an established rule that proof of defendant's ownership of the car, together with proof that the driver of the car was in the general employ of the principal, raised a legal presumption that at the time of the accident the driver was acting for the owner and within the scope of his employment, citing Stumpf v. Montgomery, 101 Okla. 257, 226 P. 65. But plaintiff admits that in that case, and in many other cases, this court has held that such presumption was rebuttable, and we think the undisputed evidence in the record is sufficient to rebut such presumption, and to establish the fact that Cochran was not the agent or servant of defendant Brown, but was a jobber, who bought goods from the manufacturer and resold them to retailers.

Both Cochran and Brown testified that Cochran by oral agreement rented the truck from Brown, who was the owner thereof, and that at the time the rental agreement was made Cochran was also given an option to purchase the truck in case Brown's nephew did not return from the Army, Brown testifying that it was the only spare truck he had, and that if his nephew came back from the Army and re-entered his service he wanted the truck for his nephew if the latter desired to use it. After it became certain that the nephew would not return to the potato chip business of defendant Brown, Cochran purchased the truck. Both Cochran and Brown testified that as a "wagon jobber" Cochran could purchase $100 worth of potato chips from Brown for $80 and resell them, retaining any amount received from such sales as his own, and that under their arrangement Cochran, instead of paying $80 for each $100 worth of goods, paid $90 for each $100 worth of goods, which additional sum paid for the rental of the truck, and its upkeep and repairs. Both defendants testified that Brown had absolutely no control over Cochran at any time; that while he knew in a general way the territory served by Cochran he was not familiar with the particular customers served by Cochran, and that Cochran went to work when he pleased and visited the various towns within his territory in whatever order he wished without any direction or instruction from Brown. Cochran further testified that in the

truck, in addition to Brownie Potato Chips, he carried various other articles of merchandise, not purchased from Brown, which he sold to his customers at a profit, and that none of the profit received from these articles was paid to Brown, nor did he account to Brown therefor. Both Cochran and Brown testified that after Cochran purchased the potato chips they became his property; that he could sell them at whatever price he desired or give them away, and that his disposal of them was of no concern to Brown.

Defendant also showed that sales to the Safeway Stores were made by Cochran on credit, and that the Safeway Stores paid for said merchandise by check to Brown. Brown testified that this was done because of the number of Safeway Stores served and as a matter of convenience to them, and that he accepted from Cochran, and from other "wagon jobbers" who served Safeway Stores, duplicate sales slips signed by the manager of the store to which the merchandise was furnished, and treated them as cash payments by the "wagon jobbers", billing the Safeway Stores at the end of each month for all goods furnished during the month. Cochran testified to this same practice, and stated that upon delivery of a sales slip signed by a Safeway Store manager he sent the sales slip to Brown, who treated it as a cash payment on merchandise.

As to the display rack over which the argument between plaintiff and Cochran arose, it appears that Brown was the owner, or had originally furnished such rack through his nephew, but there is no showing that Cochran had any instructions whatever at any time from Brown as to the disposition of these racks, and it appears that the action of Cochran in attempting to take possession of the rack was upon his own initiative.

In Sawin v. Nease, 186 Okla. 195, 97 P. 2d 27, and in Cities Service Oil Co. v. Kindt, 200 Okla. 64, 190 P. 2d 1007, we held that whether a relationship was that of master and servant or that of principal and independent contractor depended upon the power of control which the employer was entitled to exercise over the person of the alleged agent; that the right of control was the determinative factor as to whether the person causing the injury was the servant of the master or an independent contractor, citing many authorities in support of this statement. The rule therein announced applies here. In the instant case a careful examination of the record discloses no evidence of any kind or character indicating that Brown either had the right of control or attempted to exercise any control whatever over Cochran in his operations in connection with the sale of potato chips and other commodities which he carried. While the evidence shows that Cochran took over a route theretofore established by Brown's nephew there is no evidence that he was required to serve all the towns comprising the original route, or all the customers served by Brown's nephew. Brown had no supervisors or field men who checked or supervised the activities of these "wagon jobbers", but confined his activities solely to the manufacture and sale of potato chips. The method of procedure in dealing with the Safeway Stores does not indicate control or the right of control, since such arrangement was to the interest of both parties. Cochran testified that in dealing with the Safeway Stores he was required by them to extend them credit; that the amount of chips he sold to them was such that it was impossible for him to wait 30 days for payment, and that under the arrangement with Brown he turned in his tickets, received credit for them as cash, and Brown carried the account. Brown testified that Safeway Stores was a large customer for his product and he subscribed to the arrangement in order to enable Cochran to retain its business. There is no evidence showing that Brown knew all of the customers to whom Cochran made sales, or that

Cochran made any effort to keep him informed of the names and location of his customers.

Of the five elements usually considered in determining whether one was or was not a servant, as set forth in Ellis & Lewis v. Trimble, 177 Okla. 5, 57 P. 2d 244, and again set out in Sawin v. Nease, supra, the only element from which agency might be inferred in the instant case is the fact that the equipment used by Cochran was owned by Brown, and the uncontroverted testimony of Brown and Cochran conclusively rebutted the presumption of agency which might arise by reason of the ownership of the truck by Brown. See Stumpf v. Montgomery, supra. In that case we said that the presumption did not possess probative weight, but merely necessitated evidence to meet the prima facie case which it created, and that when such evidence was introduced rebutting the presumption the presumption disappeared.

In White v. Roach, 165 Okla. 143, 25 P. 2d 333, we said:

"Where the evidence in support of a defense in an action consists only of the testimony of the interested defendants, and the physical facts and circumstances and the testimony of such witnesses, if true, fully sustains such defense and is positive, undenied, and uncontradicted, it is not error for the trial court to direct a verdict for defendants, unless the physical facts and the circumstances surrounding the transaction tend to contradict the positive testimony, or the positive testimony is inherently improbable, in which case the question is one for the jury."

In Fleming v. Drew, 88 Okla. 160, 212 P. 306, we said:

"Where the evidence upon a certain question is uncontradicted, and not inherently improbable, either in itself or in connection with any other circumstances, but conclusively establishes the facts presented, it is error to submit questions of fact to the jury, but the court should advise the jury of the conclusive nature of said evidence."

In the instant case the testimony of both Cochran and Brown is undisputed and credible, is not denied or contradicted, and is not at variance with the facts or circumstances in the case or any reasonable inferences to be drawn therefrom. The trial court was not justified in disregarding it and submitting the question of agency to the jury. In such case the question of agency is one of law for the court. Hayes v. Charter Oak Fire Insurance Co., 193 Okla. 617, 145 P. 2d 941; McCullough v. Harshman, 99 Okla. 262, 226 P. 555; Continental Supply Co. v. Sinclair Oil & Gas Co., 109 Okla. 178, 235 P. 471; Southern Surety Co. v. Gilkey-Duff Hardware Co., 166 Okla. 84, 26 P. 2d 144, 89 A.L.R. 888.

Reversed, with directions to render judgment for the defendant Brown.

ARNOLD, V.C.J., and GIBSON, HALLEY, and O'NEAL, JJ., concur. DAVISON, C.J., and WELCH, CORN, and JOHNSON, J., dissent.