## ROXANA PETROLEUM CO. v. COVINGTON STATE BANK.

No. 12578—Opinion Filed April 8, 1924.

1. **Pleading—Petition—Inconsistent Counts —Same Cause of Action.**

In pleading different theories on which a single cause of action may be maintained, a petition may contain as many counts as there are distinct theories, and if each count is complete within itself so that issues may be joined thereon, the fact that the allegations of one count may be inconsistent with the allegations of another count does not vitiate the petition nor make one count destructive of the other.

2. **Same—Contract and Tort—Uncertainty as to True Facts.**

Where plaintiff may have a cause of action either on contract or in tort, dependent upon facts peculiarly within the knowledge of defendant, the petition may state the single cause of action upon both theories in separate counts, and if each count states a complete cause of action, such petition is good as against a general demurrer based upon the inconsistency of the allegations of the different counts. In such case, after issues have been joined, the court will confine the proof to the issues, or, in a proper case, require an election.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Garfield County; J. C. Robberts, Judge.

Action by Roxana Petroleum Company of Oklahoma against Covington State Bank and another.

Demurrer of Covington State Bank to plaintiff's petition was sustained and judgment accordingly, and plaintiff brings error. Reversed.

This action arose out of certain transactions had between the Roxana Petroleum Company, the Superior Oil Refining Company, and the Covington State Bank. It appears from the record that in 1918 the Superior Oil Refining Company' desired to purchase certain crude oil being taken by the Roxana Petroleum Company from its lease on the Schroeder farm in Garfield county, Okla.; that the Roxana Petroleum Company was not satisfied to sell the oil to said refining company on its own account, but agreed to do so if the refining company would furnish a guaranty that its accounts would be settled. Thereafter under date of June 4, 1918, the Roxana Petroleum Company received a letter from the Covington State Bank, signed by W. D. Wilson as cashier, which reads as follows:

"This is to inform you that this bank holds in reserve of all other accounts funds to the amount of $2,500, which is to protect the semi-monthly payments for oil due you from the Superior Oil Refining Co., of Covington, Okla., and that, therefore, we guarantee payments due you up to that amount."

Thereafter the Roxana Petroleum Company received another letter from the Covington State Bank, dated June 7, 1918, and signed by W. D. Wilson as cashier, which reads as follows:

"This is to advise you that we hold security from the Superior Oil Refining Co. to the amount of $4,000, whereby we are able to guarantee to you payments for oil which you deliver to the said refinery to the amount of $4,000. This is intended to supersede and nullify the guaranty we gave you a few days ago for $2,500."

Thereafter the oil runs from the Schroeder lease taken by the Superior Oil Refining Company were increased to such an amount that the Roxana Petroleum Company demanded of the refining company additional and increased guaranties of payment, and in conformity with this requirement the Covington State Bank on July 19, 1918, wrote a letter to the Roxana Petroleum Company, signed by W. D. Wilson as cashier, which reads as follows:

"The officials of the Superior Oil Refining Co. of this place have just arranged with us so that we are able to guarantee to you full payment for all the oil you sell them from the Schroeder farm, providing you give us notice at any time they allow any payment to go more than 25 days. Of course, subject to our revocation by notice to you."

During the months of March and April, 1919, the Roxana Petroleum Company furnished to the Superior Oil Refining Company oil from the Schroeder lease to the amount of $16,384.34. Demand for payment of this account was made on the refining company and on the Covington State Bank and payment was refused, whereupon this action was commenced. It appears that before the case came to trial, the Superior Oil Refining Company was in bankruptcy and no further proceedings in the action were had against it. After certain preliminary matters had been disposed of, the Roxana Petroleum Company filed its second amended petition consisting of four counts, each setting up the same transaction between the parties, and each presenting a different theory upon which a recovery might be had. To this second amended petition, the Covington State Bank filed a general demurrer to each of the four counts separately, and a general demurrer to the petition as a whole. This general demurrer was by the court sustained, and the Roxana Petroleum Company elected to stand upon its second amended petition, whereupon judgment was entered against it. From this judgment, after unsuccessful motion for new trial, the case is brought here for review by petition in error with case-made attached. The parties will be hereafter referred to as plaintiff, defendant bank, and defendant refining company.

Dyer & Keim and Koerner, Fahey & Young, for plaintiff in error.

Simons, McKnight & Simons, for defendant in error.

Opinion by LOGSDON, C. This proceeding involves only the correctness of the action of the trial court in sustaining a general demurrer to the second amended petition of plaintiff and separately as to each of the four counts thereof. That only one cause of action was attempted to be stated is agreed by plaintiff and defendant. Plaintiff thus states the scope and purpose of its second amended petition at page 39 of its brief:

"Plaintiff in error incorporated in its second amended petition four separate counts or causes of action, each advancing a distinct theory upon which it contends that a recovery may be had. For the purpose of demurrer each of these separate causes of action must stand or fall upon its own merits."

Defendant, with more prolixity, makes the same estimate of its scope and purpose at page 15 of its brief:

"While the plaintiff has separated its petition into four separate counts, it is apparent that the plaintiff only could have or claim one cause of action against the defend-

ant bank and which under any possible theory advanced by the plaintiff, would only be the right to recover from the bank for the oil which the plaintiff claims it sold to the Superior Oil Refining Company and payment of which it claims was guaranteed by the defendant bank; so that the plaintiff's petition does not set forth or attempt to set forth, four separate causes of action but attempts to set forth four separate counts which, taken together or singly, would state, or attempt to state, a cause of action against the defendant bank."

With this clear understanding of the scope and purpose of the pleading assailed by the demurrer it should not be difficult to reach a correct conclusion upon the sufficiency of any of the counts to state a cause of action, all facts well pleaded being admitted.

By the first count plaintiff relied upon an express written guaranty made to it by defendant bank, being the culmination of extended negotiations between the bank, the defendant refining company, and the plaintiff. At the inception of the negotiations the refining company sought to purchase oil which plaintiff was producing from a certain lease. Plaintiff refused to sell to the refining company without a guaranty of payments. Thereafter, on June 4, 1918, the defendant bank wrote plaintiff a letter guaranteeing the semimonthly settlement of the accounts of the refining company to the amount of $2,500. Three days later, June 7, 1918, the defendant bank wrote plaintiff another letter guaranteeing the accounts of the refining company to the amount of $4,-000, and canceling the previous guaranty. Thereafter the oil runs taken by the refining company increased in amount, and plaintiff demanded of it a correspondingly increased guaranty. On July 19, 1918, the defendant bank sent to plaintiff the written guaranty sued on, which was unlimited as to amount and conditioned only that plaintiff should notify the bank at any time that the refining company failed to make payments within 25 days, and providing that the guaranty was subject to revocation on due notice to plaintiff. That plaintiff relied upon the written representations and guaranty of defendant bank and delivered to defendant refining company oil to the value of $16,384.34, and that payment thereof has been refused. That defendant bank received certain benefits and advantages by reason of these transactions. That defendants are therefore liable to plaintiff for the amount of oil so furnished.

Clearly this count of the petition states a cause of action in favor of the plaintiff and against defendant bank, unless the doctrine of ultra vires operates in favor of the bank to render its contract void. Defendant

bank contends, in effect, that this count is insufficient because it is not shown that it received all of the profits derived *from the* oil by the refining company. The extent of its benefits is a matter of proof rather than of allegation. On demurrer it is admitted that it did receive benefits as alleged. Whether those benefits are sufficient to preclude the defense of ultra vires must depend upon the facts shown by the evidence. The rule in this state was announced by this court in the case of Crowder State Bank v. Aetna Powder Co. et al., 41 Okla. 394, 138 Pac. 392, thus:

"Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires."

In the body of the opinion, on page 400, the rule is applied in this language:

"And it seems to us that, whether a contract is ultra vires or not, if the corporation has permitted its execution and allowed innocent parties to surrender property or other things of value thereunder without objection, and it is impossible to restore their status quo and at the same time itself receive and keep the benefits or beneficial effects, it will not then be heard to plead ultra vires or lack of authority of one of its principal officers to bind it in that particular respect."

The rule and its application announced in the above case has been expressly followed in Ewing et al. v. Board of Commissioners, 53 Okla. 250, 156 Pac. 229; Parker Gordon Cigar Co. v. First Nat. Bank of Claremore, 55 Okla. 468, 154 Pac. 1153; First Nat. Bank of Ada v. Womack, 56 Okla. 359, 156 Pac. 207; Western & Southern Fire Ins. Co. v. Murphy, 56 Okla. 702, 156 Pac. 885; Oklahoma City Nat. Bank v. Ezzard, 58 Okla. 251, 159 Pac. 267 (aff. 243 U. S. 631); Rainbow Oil & Gas Co. v. Barton, 70 Oklahoma, 173 Pac. 1135; Bennett v. W. A. Gage & Co., 74 Oklahoma, 176 Pac. 744.

Defendant bank seeks to distinguish the instant case from some of the above cited cases on the facts. But it must be borne in mind that in each of the cases sought to be so distinguished this court was passing upon the facts shown by the evidence after trial upon the merits, while in the instant case the question is presented upon facts admitted by demurrer to the petition. Certain benefits are alleged to have been received by the bank by reason of the transactions which it guaranteed. Whether the proof will sustain these allegations is not before this court. The allegations are sufficient to admit proof.

It follows that the order sustaining the

general demurrer to the first count of the second amended petition was error, unless the general demurrer to the petition as a whole was correctly sustained. Defendant bank seeks to sustain this action of the trial court upon the theory that the first and fourth counts of the second amended petition are so inconsistent and irreconcilable as to be mutually totally destructive of the cause of action stated in each. This fourth count alleges all of the facts concerning the transactions substantially as in the first count, and then states a cause of action in tort as follows:

"Plaintiff further states that after said demand for payments upon said defendants as aforesaid it was advised and now states the facts to be that the representations made by defendant, Covington State Bank, in the writings aforesaid hereto attached and marked as 'Plaintiff's Exhibits A-1, A-2 and A,' were untrue and false, and that said defendant, Covington State Bank, made the statements, in writing, of said special deposits, securities, arrangements and agreements by and between the defendants herein whereby it guaranteed the account of defendant, Superior Oil Refining Company, to this plaintiff with the fraudulent intent and purpose of securing the sale of said oil of plaintiff to said defendant refining company and that said defendant, Covington State Bank, knew said statements to be false and untrue when made, and that by reason of said fraudulent and wrongful act on the part of defendant, Covington State Bank, plaintiff has sold and delivered its oil as aforesaid to its damage in the sum of $16,384.34."

It is the contention of defendant bank that this vitiates the entire petition, and its argument upon this theory is epitomized in the following language at page 16 of its brief:

"It is apparent at a glance that these allegations are not only inconsistent but diametrically opposed to each other and self-destructive; in other words, they cannot both be true. Therefore, we have a situation where the petition of the plaintiff nullifies itself. It alleges two exactly opposite states of facts and neither the court nor the defendant can tell what the plaintiff claims are the facts in the case; and upon this proposition, the authorities are so well agreed that it is no longer an open question."

In each of the four counts the primary and ultimate facts relied upon for recovery are the execution and delivery by defendant bank of the written guaranty of July 19, and the delivery of its property by plaintiff to defendant refining company in reliance thereon. In each count there are secondary facts relied upon, but these secondary facts are different in each count. The secondary fact is relied on merely to obviate the doctrine of ultra vires. The secondary fact relied upon in the second count is the statement of defendant bank that it had received benefits, and this is relied upon for the same reason. The secondary fact relied on in the third count is the statement of defendant bank that it would hold certain assets of defendant refining company as indemnity, and this is relied upon to raise an estoppel. The secondary facts relied upon in the fourth count are that after defendant bank refused payment plaintiff was "advised and now states" that the representations made as to the secondary facts set forth in the three preceding counts were false when made and that they were made to induce the plaintiff to part with its property, and these secondary facts in the fourth count are relied upon to establish fraud and deceit in obtaining plaintiff's property. Thus the primary and ultimate facts relied upon in each of the four counts are the same. The secondary facts, obviating rules of law otherwise precluding recovery, are different under each count. The claim, the demand, the detriment, the cause of action throughout, is the same. The only doubt involved is as to what the proof will show under the secondary allegations. These facts are peculiarly within the knowledge of defendant bank. Should plaintiff be denied a trial on its primary cause of action because it is uncertain as to which group of secondary facts will be applicable when the defense is disclosed? Such is not deemed to be the rule either in law or equity.

That this contention of defendant bank is unusual and novel is demonstrated by the lack of judicial expression upon the question in this state. No case is found where this court has directly passed upon this question. However, it has been very nearly approached several times, and it is considered that the correct rule to be followed may be readily drawn from analogous expressions of this court. In Mellon v. Fulton, 22 Okla. 637, 98 Pac. 911, the first paragraph of the syllabus reads:

"In a suit on account for services rendered, where there is more or less uncertainty as to the grounds of recovery, there may be properly joined in the petition a count upon express contract and a count upon quantum meruit, and the question of granting or overruling a motion to require plaintiff to elect upon which count he will stand is addressed to the sound legal discretion of the court."

In Harris v. Warren-Smith Hardware Co., 44 Okla. 477, 144 Pac. 1050, the third paragraph of the syllabus reads:

"Where a party has two or more distinct and separate reasons for the obtainment of the relief he asks, and where there is some uncertainty as to the grounds of recovery,

the complaint may set forth a single claim or ask for the same relief in several distinct counts or statements."

The above paragraph is adopted as the second paragraph of the syllabus in the case of Carter Oil Co. v. Garr et al., 73 Oklahoma, 174 Pac. 498. It is true that in neither of these three cases was the question of joining an action on contract with one for deceit in separate counts considered. But no good reason appears why the rule which permits a cause of action to be stated both on contract and quantum meruit in separate counts should not also permit a cause of action to be stated both on contract and in tort in separate counts, where uncertainty exists as to which theory is the correct one in advance of joining issues. Cases cited by defendant bank as sustaining its contention have been carefully examined. Where applicable, they are found to deal with inconsistent allegations in the answer. Conwill v. Eldridge et al., 71 Oklahoma, 177 Pac. 79; Wiley v. Keokuk, 6 Kan. 94; Butler v. Koulback, 8 Kan. 671; Yondle v. Crane, 13 Kan. 344; Barnum v. Kennedy, 21 Kan. 181; Wright v. Bachellar, 16 Kan. 259; Mitchell v. Ripley, 5 Kan. App. 818; Osborne v. Shilling, 74 Kan. 675. In Fetzer v. Williams, 80 Kan. 554, cited as sustaining this contention, the first paragraph of the syllabus reads:

"A party cannot rely at the same time on inconsistent defenses, but inconsistent allegations do not render a pleading demurrable."

It follows from what has been said that the demurrer to the petition as a whole should have been overruled. After issues are joined the court will, of course, confine the proof to those issues, or, in a proper case, require an election between counts.

For the reasons herein stated, the judgment of the trial court should be reversed, with directions to overrule the demurrer to each count of the petition and to the petition as a whole, and for further proceedings in conformity to law.

By the Court: It is so ordered.