## CANFIELD et al. v. CANFIELD et al.

No. 21708.   Jan. 30, 1934.

Rehearing Denied April 3, 1934.

Rittenhouse, Lee, Webster & Rittenhouse, for plaintiffs in error.

Hagan & Gavin and Allen & Jarman, for defendants in error.

OSBORN, J. This is an action in equity filed in the district court of Oklahoma county by C. V. Canfield, Bess Canfield, Ida May Canfield Van Dall, Marguerite Canfield Brucher, Myrtle Canfield Brandt, and Lester Canfield against Laura Canfield, Seminole Royalty Company, Atlantic Oil Producing Company, Anderson-Prichard Oil Corporation, Dell Miller, and R. B. Yadon, special administrator of the estate of C. N. Canfield, for the cancellation of certain conveyances of real estate. The cause was tried to the court and judgment rendered in favor of defendants, from which plaintiffs have appealed. The parties will be referred to as they appeared in the trial court.

The instruments sought to be canceled are two warranty deeds dated December 9, 1921, from C. N. Canfield, now deceased, to his wife, Laura Canfield, one of the defendants, and a mineral deed dated September 15, 1928, conveying certain royalty interests in the land to the Seminole Royalty Company. Various other defendants assert some interest herein acquired by subsequent conveyances of the mineral rights.

Plaintiffs rely upon two grounds for cancellation of the instruments: First, that they are forged; and, second, that C. N. Canfield was mentally incompetent to execute the conveyances and they were procured from him by his wife by duress, fraud, and undue influence.

The record shows that Laura Canfield, the defendant, is the third wife of C. N. Canfield. The plaintiffs Myrtle Canfield Brandt and Lester Canfield are children of the first marriage. The plaintiff Bess Canfield, Ida May Canfield Van Dall, Marguerite Canfield Brucher, and Charles LaVerne Canfield are children of the second marriage. C. N. Canfield was divorced from his second wife in 1910, and on June 8, 1919, married defendant Laura Canfield. They lived together as husband and wife until May 14, 1929, when C. N. Canfield died. This action was filed on May 29, 1929.

The issue of forgery is purely an issue of fact, and the trial court found that the evidence was insufficient upon which to base a finding that the deeds were forged. We have carefully examined the record to determine whether or not said finding is against the clear weight of the evidence. Attached to the record are a great number of genuine signatures of C. N. Canfield, together with the disputed signatures, which we have examined in connection with a great array of testimony in connection with this issue. Several expert witnesses qualified and were examined and cross-examined in minute detail. J. C. Shearman, Dr. Edwin DeBarr, and D. C. Patterson qualified as experts and testified for plaintiffs that in their opinion the signatures upon the documents in question were not genuine. Albert D. Osborn and B. B. Hickman qualified as experts and testified for defendants that the signatures were genuine and in their opinion the deeds were executed by C. N. Canfield. A number of bankers, who were not qualified as experts but qualified as to familiarity with signatures due to the nature of their business, testified that in their opinion the signatures were genuine. The evidence of plaintiffs is wholly negative. No effort was made to show that the handwriting in question was the handwriting of any particular person. The testimony as to the resemblance of the disputed handwriting to that of Laura Canfield is sufficient to raise only the very slightest suspicion. No expert testified that the disputed signatures were in fact her handwriting. The trial court, in addition to the opinion of these numerous witnesses, had opportunity to examine the signatures, and enlarged photographs thereof, which show in better detail the characteristics thereof, and we have been given the same opportunity by the incorporation of these exhibits in the case-made. After an examination of the record and exhibits, we are driven irresistibly to the conclusion that the finding of the trial court on the issue of forgery is not against the clear weight of the evidence.

The defendants point out the inconsistency of plaintiffs' plea of incompetency and undue influence. It is not necessary in this case to determine whether or not reliance upon mental incompetency precludes plaintiffs from relying upon undue influence, for the reason that the trial court found against plaintiffs on both propositions, which findings are not against the clear weight of the evidence.

On the issue of mental incompetency, evidence was introduced by members of the family and the neighbors of C. N. Canfield in which all of his peculiar traits of character, as evidenced by his conduct for over 40 years, were pointed out. A number of incidents over this long period of time were related which tended to show that deceased was a man of high temper; that he was

stingy and had a desire to accumulate money; that he was cruel to his former wife and children; that he was cruel to his work stock; that he was injured on two or three occasions during his lifetime. It is noted that most of the incidents related by the witnesses occurred at least 20 years prior to the death of C. N. Canfield. Dr. Grover Burnett was qualified as an expert on mental diseases, and counsel for plaintiffs submitted to him a lengthy hypothetical question recounting all the various incidents about which the witnesses had testified, which question also included the hypothesis that deceased was a drug addict, and asked the doctor to state the condition of the mind of the deceased on April 17, 1928, and prior thereto, and the witness answered that deceased was incompetent and insane; that his insanity was a type known as paranoia, that a person might be afflicted with this form of insanity and would appear to be perfectly sane on any subject not connected with the subject of insanity, as paranoia is a form of insanity which is noticeable in connection with only a few subjects; that it is caused by a defective biology of the tissues; a mismating of the male and female germ cells; that the earlier symptoms are nervousness and irritability, which develop into a fear and suspicion, which are followed by delusions of a persecutory type; that the subject believes he has enemies who are against him, who want to hurt his business and to vex him; that there is no cure for this form of insanity; that a person once a paranoic is always a paranoic. To the same general effect is the testimony of Dr. E. L. Bagby, also qualified as an expert on mental disease.

The defendants introduced a great number of witnesses who were friends, acquaintances, and business associates of the deceased, C. N. Canfield, and had known him over a period of about 40 years, who testified that they had never seen or observed anything in his conduct that would indicate that the deceased was suffering from any form of mental disease. Included in this list of witnesses were those who transacted business with deceased during the latter part of his life. It is shown that during this time the deceased was stricken with cancer and was in a weakened physical condition. A careful study of the testimony of all of these witnesses fails to disclose any evidence sufficient to justify a finding that on December 9, 1921, the date of the execution of the deed, or on September 15, 1928, the date of the execution of the mineral royalty deed, the deceased did not have mental capacity sufficient to execute a conveyance of real estate which would pass a title to his interest therein when measured by the rule of law applicable thereto. The rule is stated in the case of Keenan v. Scott, 99 Okla. 63, 225 P. 906, as follows:

"The capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting. Miller v. Folson, 49 Okla. 74, 149 P. 1185."

"It is the general consensus of judicial opinion that mental incapacity, whether it be due to mere weakness of mind or actual insanity, is not in itself a sufficient basis for obtaining the cancellation of a written instrument, unless the state of idiocy or imbecility complained of is such that it rendered the afflicted individual incapable of understanding the nature and effect of the transaction at the time the instrument was executed. 4 R. C. L. p. 503, art. 17."

Certain other testimony was offered showing that, on various occasions after the execution of the conveyances in question, C. N. Canfield knew the results of such conveyances and recognized them as binding.

A companion case, No. 23266, Laura Canfield v. Lester Canfield, 167 Okla. 590, 31 P. (2d) 162, has been considered in connection herewith, and was this day decided by this court. In that case the same parties are involved, and it is sought to set aside a will of the deceased and to cancel a warranty deed. The issues of mental incompetency and undue influence are involved therein, and for a further discussion of these issues the opinion in said cause is hereby referred to for further light it might cast upon said issue presented herein.

It is the theory of plaintiffs in both cases that Laura Canfield married deceased for the sole purpose of obtaining his property. He was approximately 69 years of age at the time of the marriage, and she was approximately 50. Plaintiffs offered evidence to the effect that deceased hated his second wife and his children. It is contended that Laura Canfield encouraged and fomented this feeling against his second wife and children for the express purpose of procuring the deeds in question. Plaintiffs attempted to prove that Laura Canfield was a narcotic addict and the deceased was a sufferer from rheumatism and later from cancer; that she gave him narcotics and thereby secured a dominating influence over him to the extent that her will became his will, and thereby he did not have mental capacity to execute the conveyances

598

in question or to acknowledge them before a notary public. In cause number 23266, there was a finding of the court against the contention of plaintiffs regarding the furnishing of narcotics to the deceased. In this case there is a general finding which carries the same result. On the issues above outlined, a great mass of evidence was introduced, and the record in this case consists of 2,750 pages. We have carefully examined the same, together with the construction placed upon said testimony by the lengthy briefs of counsel, and find that the judgment of the trial court is not against the clear weight of the evidence.

Plaintiffs contend that the trial court erred in allowing the defendant Laura Canfield to testify over their objection, citing section 588, C. O. S. 1921, sec. 271, O. S. 1931, which in part provides:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partners or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person. * * *"

There is no merit in said contention. The record shows that the trial court permitted the witness to testify, provided she did not testify to any transaction or communication had with the deceased, and an examination of her testimony discloses that the instruction of the court in this regard was not violated. It is not the purpose of this statute to prevent a person from taking the witness stand in defense of his rights, when said rights are made the subject of an action brought by another. See Hoebing v. McCarrick, 109 Okla. 247, 235 P. 191. The court did not err in overruling the objection of plaintiffs to allow defendant to testify, and properly held that she could not testify in regard to any communications or transactions with the deceased.

The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and BUSBY and WELCH, JJ., concur.