FIRST NAT. BANK OF ENID, Adm'r, v. HEADRICK, Adm'r, et al.

No. 29163.   Dec. 16, 1941.

Rehearing Denied Feb. 3, 1942.

*121 P. 2d 566.*

Elam & Crowley and McKeever, Stewart & McKeever, all of Enid, for plaintiff in error.

Simons, McKnight, Simons, Mitchell & McKnight, of Enid, for defendants in error.

OSBORN, J.   This action was instituted in the district court of Garfield county on November 3, 1937, by V. L. Headrick, as guardian of the estate of Bettie L. Shobe, hereinafter referred to as plaintiff, against the First National Bank of Enid, Okla., as administrator with will annexed of the estate of Marshall Parker Shobe, deceased, wherein plaintiff sought to have canceled a warranty deed to certain real property executed by Bettie L. Shobe to Marshall P. Shobe during his lifetime, on the ground of the mental incompetency of the grantor. Plaintiff also sought an accounting of some money and personal property involved in the transaction. Issues were joined and the cause was tried to the court. The trial was concluded on September 22, 1938, and the court, after extensive findings of fact, entered judgment in favor of plaintiff decreeing the cancellation of the warranty deed involved herein upon certain conditions hereinafter stated. Bettie L.

Shobe died on October 3, 1938, at Hamburg, Germany, and immediately V. L. Headrick was appointed administrator of her estate and this cause was revived in his name as administrator and in the names of John P. Kramer, Joe Ann Kramer, and Mary Edna Kramer as heirs at law of Bettie L. Shobe, and defendant appealed to this court.

The record and briefs are voluminous. We shall endeavor in our narration of facts to relate only the facts which are essential to outline the issues of law herein presented.

The record shows that Bettie L. Shobe and her husband, John Shobe, were pioneers of Garfield county, having lived in the vicinity of Enid since the opening of the Cherokee Strip. They had two children, Marshall P. Shobe, a son, and Edna Shobe, a daughter. Marshall P. Shobe was educated for the profession of dentistry. He moved to Hamburg, Germany, in 1904, where he continued to live and practice his profession until December 25, 1936, the date of his death. Edna Shobe married one Frank Kramer and moved to the State of Kansas; to their union were born the three children above named. Edna Shobe Kramer died in February, 1920. John Shobe died in March, 1920. It is shown that Bettie L. Shobe owned the home in which she lived and certain business property in the city of Enid from which she derived a substantial income. The appraised value of the two pieces of property was $30,000. For some time prior to November 19, 1932, the evidence discloses that Bettie L. Shobe, on account of her advanced years, began to develop a disability known as senile dementia. The record discloses that one Stella Berry, a niece of Mrs. Shobe, learned of her condition and notified Marshall P. Shobe by letter that his mother was not physically or mentally able to care for herself; that he left his home in Hamburg, Germany, and came to Enid for the evident purpose of taking his mother with him to Germany in order that he might care for her. On November 19, 1932, a warranty deed was executed by Bettie L. Shobe to Marshall P. Shobe in which she conveyed to him all of her real property. At the same time a contract was entered into between the two parties wherein it was provided that in consideration of the transfer of said real property to Marshall P. Shobe, he agreed to provide and maintain a home and support and care for his mother during the remainder of her natural life.

Bettie L. Shobe and Marshall P. Shobe returned to Hamburg, Germany. The evidence discloses that he provided for and maintained his mother and received the income from the Enid property until the date of his death, to wit, December 25, 1936.

On May 23, 1934, Marshall P. Shobe executed his last will and testament, wherein he appointed one Miss Karla Winter, referred to in the will as "my friend," as executrix and trustee. He provided that said trustee should take and hold all of his property, specifically describing the property located in Enid, Okla., and invest and maintain said property in such manner as to produce and provide an income to support and care for Bettie L. Shobe during the remainder of her natural life. The will further provided that upon the death of Bettie L. Shobe all of the estate of Marshall P. Shobe should become the property of Miss Karla Winter, her heirs and assigns.

It appears that in November, 1935, Bettie L. Shobe was placed in an institution at Ahrensburg, Germany, where she remained until November, 1936, when she was placed in an institution for the care of mental cases located in the suburbs of Hamburg, Germany; that she remained in that institution until the date of her death.

It is urged, first, that the trial court erred in overruling a special demurrer of defendant to plaintiff's amended petition and erred in overruling the motion of defendant to require plaintiff to elect upon which of two causes of action he would proceed. Plaintiff's amended petition contained two counts. In the first count it was alleged that

prior to November 19, 1932, Bettie L. Shobe, who was a woman of advanced age, became afflicted with bodily infirmities and mental deterioration and was so afflicted by loss of memory, lack of comprehension and understanding that she was mentally incompetent to manage her property and engage in any transaction affecting her property or property rights and was subject to be deceived and imposed upon by artful and designing persons. It was further alleged that Marshall P. Shobe secured certain dominion and control over his mother on account of her physical and mental condition and, in pursuance of a plan and design to obtain all of her property, induced her to sign the conveyance involved herein. In the second count in plaintiff's petition it was alleged that at the time of the execution of the conveyance involved herein, Bettie L. Shobe was wholly incompetent to manage her property and to engage in any transaction affecting her property or property rights or to understand or comprehend the nature and effect of the transaction involved herein.

Plaintiff contends that even though there is some inconsistency between the theory of utter incompetency on the part of the grantor and the theory of such mental weakness on her part that her free will was overcome by the exercise of improper dominion and influence over her by the grantee, nevertheless, under our established rules of procedure, the two theories of recovery were properly presented in separate counts in plaintiff's petition. In the case of Southern Surety Co. v. Gilkey-Duff Hdw. Co., 166 Okla. 84, 26 P. 2d 144, 89 A.L.R. 888, it was held:

"When the plaintiff has two or more separate theories of, or reasons for, recovery, each of them may be set forth in a different count. This form of pleading is especially appropriate when there is some uncertainty as to the ground of recovery, and may be employed even though there is some inconsistency in the different counts."

See, also, Southern Surety Co. v. Sparlin, 166 Okla. 89, 26 P. 2d 738; Mellon v. Fulton, 22 Okla. 636, 98 P. 911, 19 L.R.A. (N. S.) 960; Roxanna Pet. Co. v. Covington State Bank, 98 Okla. 266, 225 P. 375, 35 A.L.R. 774; 21 R.C.L. 470, par. 35; 49 C. J. page 158, para. 174; Bancroft on Pleadings, vol. 1, page 175.

The trial court did not err in overruling the special demurrer to plaintiff's petition nor in refusing to require plaintiff to elect upon which of the two theories of recovery he would proceed.

We proceed to the principal proposition relied upon for reversal, and that is that the judgment of the trial court is contrary to the clear weight of the evidence. A great number of witnesses were called and examined. The evidence is highly conflicting. One Dr. S. W. Mayberry, a physician and surgeon who was acquainted with Bettie L. Shobe since the year 1900, and who had treated her for various forms of illness during the years of such acquaintance, testified that she was incompetent to understand the nature of a contract even three years before the date of the deed involved herein. He testified that during that time she was suffering from senile dementia, a form of insanity caused by old age and worry, and that she also had arterio sclerosis, or hardening of the arteries in the brain. He further testified that senile dementia is a disease that comes on gradually and progressively and that from month to month she got a little worse and became a little more incompetent.

Dr. Julian Field, a physician who testified in behalf of defendants, who had known Bettie L. Shobe for a number of years, verified the diagnosis of senile dementia, but stated that there were times when her mind was not confused and that she would have sufficient discretion at such times to understand the nature of a conveyance of real estate.

Other medical men who made casual observation of the conduct and demeanor of Bettie L. Shobe testified that in their opinion she was fully competent to understand the nature of the transaction herein involved.

H. G. McKeever, the attorney who prepared the deed and contract involved herein and who was acquainted with the Shobe family for a number of years, testified at length with reference to the conversation of the parties at the time of the execution of the contract and deed indicating that the matter was thoroughly understood between them and that the grantor signed the deed with full knowledge and comprehension of its force and effect. The witness gave it as his opinion that she was thoroughly competent at the time to understand the nature of the transaction.

A number of lay witnesses were called and testified regarding various incidents in the life of Bettie L. Shobe which would indicate a lack of mental capacity in her later years. A number of these incidents are referred to in the findings of the trial court. In arriving at the ultimate conclusion the trial court directed attention to the changes shown by the evidence to have occurred in her habits and conduct after the appearance of senile dementia. The court pointed out that in 1932 the grantor was approximately 70 or 71 years of age, although her exact age was not disclosed by the record; that she and her husband were pioneers; that in her earlier life Mrs. Shobe was ambitious for her children and her grandchildren and encouraged them in securing a good education; that she exercised good business judgment in the conservation and management of her property; that in her normal days she was a neat housekeeper and neat in her appearance; that she participated in social and religious affairs; that she lived quietly without ostentation and display; that she was "just a good, commonsense, pioneer woman." It was found that after she became afflicted with senile dementia there was a noticeable change in the habits of a lifetime; that her house became dirty and untidy; she became slovenly and untidy in her personal appearance; that one witness testified that she did not know how to cook potatoes; that in her yard was a cherry tree and that on one occasion she asked a witness what to do with cherries and how to prepare them; that it was shown that she would turn on the gas and walk off somewhere looking for a match; that she would get up in the middle of the night and start a fire thinking it was approaching day; that she would hand a newsboy a hundred-dollar bill not knowing the value of same; that she was unable to take care of her monthly bills and that her roomers looked after the bills for her; that she could not remember names. It appears that at times she could not remember the name of her son Marshall and could not remember the names of her neighbors whom she had known for years and of the young ladies who roomed in her house. The trial court was of the view that conveying all of her property to her son upon his agreement to care for her was a foolish act which in itself indicated a loss of the business judgment which Mrs. Shobe exercised in her normal years. In addition to the various acts indicating a lack of normal mentality referred to in the findings of the trial court, it may be added that considerable evidence was introduced showing that Mrs. Shobe entertained a high degree of affection for her three grandchildren and had made substantial contribution of funds toward their education. It is a reasonable presumption that the objects of affection become the natural objects of one's bounty, and, although Marshall P. Shobe was the only living child of Bettie L. Shobe, there is evidence in the record from which it might be concluded that the disinheriting of the three grandchildren was not a natural act under the circumstances. The trial court concluded that "the deed and contract in this case are void for want of mental capacity upon the part of the grantor to understand the nature, character, and consequences of the act."

The general rule applicable to this controversy was stated by this court in the case of Channell v. Jones, 184 Okla. 644, 89 P. 2d 769, wherein it was held:

"Where a grantor in a deed is incapable of comprehending that the effect of a deed, when executed and delivered,

would be to divest such grantor of title to the land described in such deed, said grantor is, as to such deed, entirely without understanding within the meaning of section 9402, O. S. 1931, and the deed is void and conveys no rights to the grantee."

Defendants rely upon the rule heretofore announced in Canfield v. Canfield, 167 Okla. 595, 31 P. 2d 149, wherein we held that mental incapacity is not a sufficient basis for cancellation of a written instrument unless it was such that would render the afflicted incapable of understanding the nature and effect of the transaction at the time the instrument was executed. In the instant case the court found that the grantor did not have sufficient mental capacity to understand the nature and consequences of the act. As we have stated, the evidence was conflicting, but we have carefully reviewed the same and are of the view that the finding of the trial court with respect to the degree of mental incapacity of Bettie L. Shobe at the time of the execution of the instrument involved herein is not contrary to the clear weight of the evidence.

As hereinabove stated, the judgment decreeing cancellation of the warranty deed involved here was entered subject to a condition, and that was that Miss Karla Winter be paid the sum of $1,000. It will be borne in mind that after the death of Mrs. Bettie L. Shobe, Karla Winter became the sole devisee under the will of Marshall P. Shobe and is therefore a real party in interest in this cause. As grounds for said award to Miss Winter the trial court found that immediately when Marshall P. Shobe took his mother to Germany he called upon Miss Winter, who was the woman that was to become his wife, to assist him in caring for his mother. The court further found that Miss Winter had the full responsibility of supervising and looking after Mrs. Shobe subsequent to the death of Marshall P. Shobe in 1936, and that she had faithfully performed the duties resting upon her by virtue of the request of Marshall P. Shobe, and as a matter of justice was entitled to a reasonable compensation for her services. The court was of the view that $1,000 might, in a measure, "repay her for the care, devotion and the overseeing of Mrs. Shobe." By cross-petition in error the plaintiffs in error seek to reverse that part of the judgment relating to the award made to Miss Winter for the reason that it was outside of the issues in the cause and that "no pleading was filed on behalf of the said Karla Winter asking for payment to her of the sum of $1,000 or any other sum, to reimburse her for services in taking care of Bettie L. Shobe." In the case of Lewis v. Schafer, 163 Okla. 94, 20 P. 2d 1048, it was held:

"It is a fundamental rule that equity, having once attached in a proper proceeding, will administer complete relief on all questions properly raised by the evidence, regardless of whether or not such question or issues are specifically raised by the pleadings."

In the case of G. A. Nichols, Inc., v. Watson, 170 Okla. 152, 37 P. 2d 943, it was held:

"Where a party is in a court of equity invoking its aid to grant equitable relief, it is always within the power of the court to impose upon such party by its decree such conditions as are just and proper under the circumstances of the case."

We have examined the record and find that there is ample evidence to sustain the finding of the court that the ends of justice required the payment of the compensation above named to Miss Karla Winter for the services rendered. The authorities we have quoted disclose that the court, as a court of equity, was empowered to make such order.

The judgment of the trial court is, in all things, affirmed.

CORN, V. C. J., and RILEY, BAYLESS, GIBSON, HURST, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., absent.