## ANTLE v. HARTMAN et al.

No. 31234.　Feb. 8, 1944.

*145 P. 2d 756.*

Dan Jennings, of Oklahoma City, for plaintiff in error.

E. H. Gipson, of Sayre, for defendants in error.

PER CURIAM. This action was commenced by Irene Antle, hereinafter called plaintiff, to cancel a deed made to Katie Hartman, who joined with her husband, Elisha Hartman, appeared as defendants. Judgment was for the defendants on a trial to the court without the intervention of a jury, and plaintiff appeals.

The evidence discloses that on the 3rd day of October, 1938, Elizabeth Carper, a widow, was the owner of 240 acres of land in Beckham county. This land had been acquired by the joint efforts of Elizabeth Carper and her husband, Grant Carper, and was acquired in 1901 or thereabouts. Elizabeth Carper and Grant Carper had two children, the plaintiff and Katie Hartman, one of the defendants. Grant Carper died in 1934, and Elizabeth Carper moved to the home of the defendants and there resided until her death in January, 1939. She had been in failing health for a number of years and for the period after removal to the home of the defendants had been confined to her bed. She was 93 years of age at the time of her death. On the 3rd day of October, 1938, L. G. Brewer, a notary public, and Dr. Phillips, a physician and surgeon, went to the defendants' home and there in their presence Elizabeth Carper destroyed a will formerly executed by her willing the above land to her two daughters share and share alike. At the same time and place she executed a deed to the 240 acres to the defendant Katie Hartman and signed a letter addressed to the plaintiff advising her of the execution of the deed, and the destruction of the will. In this letter it is stated that the defendant Katie Hartman would pay to the plaintiff the sum of $500.

Plaintiff in nine allegations of error makes two attacks upon the conveyance.

It is first argued that Elizabeth Carper was mentally incompetent. We have carefully reviewed the evidence, and aside from the extreme age of the grantor there is little evidence of any mental incompetency. Dr. Phillips stated that in his opinion the grantor was mentally competent. Fragmentary evidence of isolated instances indicating failing memory tend to dispute this evidence. A grantor in making a conveyance is presumed to have mental capacity sufficient for that purpose, and the burden of proof is upon the one who alleges the want of such capacity. Broeker v. Day, 124 Neb. 316, 246 N. W. 490; Brugman v. Brugman, 93 Neb. 408, 140 N. W. 781; Keedick v. Brogan, 116 Neb. 339, 217 N. W. 583; Canfield v. Canfield, 167 Okla. 595, 31 P. 2d 149. In Canfield v. Canfield, supra, it is stated that the test of capacity to make a deed is that the grantor shall have the ability to understand the nature and effect of the act in which he is engaged and the business he is transacting.

We are not willing to state that the weight of the evidence clearly discloses a lack of mental capacity in the grantor.

It is next argued that the case is clearly one of undue influence and that the conveyance should have been avoided for this reason. The evidence in the case shows that the grantor had another living daughter, the plaintiff Irene Antle. The conveyance was without consideration other than love and affection and perhaps appreciation for care and filial attention. The conveyance was of all the property of substantial value. Under these circumstances the law requires that the court should closely scrutinize anything done by the grantees to secure the deed in question, and the burden is on the grantees to overcome the presumption that the gift was secured through undue influence. As stated in Broeker v. Day, supra, not all influences will avoid a deed. Influences which arise out of the affection, confidence, and gratitude of a parent to a child and inspire a gift are natural and lawful influences and will not render such a gift voidable. It is only when influences

526

have been such as to confuse the judgment and control the will of the grantor that they become undue influences. If the act done is not the act of the grantor, but is simply carrying out the will of the grantees, the undue and unlawful influence will cause equity to avoid the acts done on account thereof. Hacker v. Hoover, 89 Neb. 317, 131 N. W. 734; Gibson v. Hammang, 63 Neb. 349, 88 N. W. 500; and Brugman v. Brugman, supra. In this case there is a total lack of evidence of any urging or importuning. The defendant Katie Hartman had cared for the grantor a number of years. Plaintiff, through circumstances carrying no reflection upon her whatever as a dutiful daughter, was forced to live away from the mother. To avoid the natural acts of an appreciative parent under these circumstances would be most unnatural. See, in this connection, In re Jones' Estate, 190 Okla. 123, 121 P. 2d 574. Undue influence cannot be established by merely showing an opportunity for its exercise. Sporn v. Herndon, 190 Okla. 149, 121 P. 2d 602; Canfield v. Canfield, 167 Okla. 590, 31 P. 2d 152. The notary who took the acknowledgment to the deed at the time of its execution stated that when he was requested to go to the home of the defendants for the execution of the deed he requested that a competent physician be present for the reason that he knew the extreme age and physical condition of the grantor. This relieves this evidence of any suggestion that it was the intention of the defendant Katie Hartman to guarantee against any question of undue influence in the execution of the deed.

After a review of all of the evidence, we are of the opinion, and hold, that the judgment is correct.

Judgment affirmed.

CORN, C.J., GIBSON, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur.