CARROLL v. RISNER et al.

No. 33085.   June 8, 1948.
Rehearing Denied March 22, 1949.
Application for Leave to File
Second Petition for Rehearing
Denied May 3, 1949.

*205 P. 2d 282.*

Thos. W. Champion, Louis A. Fischl, and Ezra Dyer, all of Ardmore, for plaintiff in error.

Williams & Williams and Ernest W. Tate, all of Ardmore, for defendant in error.

DAVISON, V.C.J. In October, 1943, Whit Carroll conveyed by quitclaim deed to one of his sons, Mitchell Carroll, approximately 166 acres of land in Carter county upon consideration of the grantee paying the taxes thereon amounting to some $225. For correction of the description therein he executed a warranty deed on August 28, 1945. This action was brought February 26, 1946, by the guardian of Whit Carroll, who, in the interim, had been adjudged an incompetent, for the purpose of canceling these deeds and for an accounting of rents, profits and income received therefrom by the said Mitchell Carroll. Plaintiff further sought the cancellation of an oil and gas lease covering a part of the premises, executed by Mitchell Carroll to the Mid-Continent Petroleum Corporation, September 5, 1945. As grounds for such recovery the petition alleged that the warranty deed was a forgery and was executed at a time when the grantor was "non compos mentis"; that both deeds were obtained by fraud and undue influence without the payment of any consideration. Judgment of the trial court for plaintiff was predicated upon extensive findings of fact and conclusions of law which found the grantor mentally incompetent at the time of the execution of said deeds, but further found that there was no fraud or undue influence, the allegation of forgery being abandoned. From this judgment, the defendant Mitchell Carroll has appealed.

The lease to the Mid-Continent Petroleum Corporation was sustained upon the theory of an innocent purchaser for value and that part of the judgment has become final and is not involved herein.

Although the petition, as to the defendant, Mitchell Carroll, contained no allegation of the mental incapacity of the grantor at the time of the execution of the first deed, the case was tried in the lower court and is here presented by both parties as though such allegation had been made therein. Under such condition, the petition will be considered as amended to conform to the proof. 12 O.S. 1941 §317; Newman v. Kirk, 164 Okla. 147, 23 P. 2d 163; St. Paul Fire & Marine Ins. Co. v. Mittendorf et al., 24 Okla. 651, 104 P. 354, and cases therein cited.

The sole question presented by this appeal is the sufficiency of the evidence to support the trial court's finding that the grantor, Whit Carroll, "was mentally incompetent to know and understand the consequences of his acts, and that he did not know that by the execution of said deeds he was divesting himself of said property." It is plaintiff's contention and apparently was the belief of the trial court that this case comes within the boundaries of application of the rule in the case of Channell v. Jones, 184 Okla. 644, 89 P. 2d 769, as quoted in the case of First National Bank of Enid v. Headrick, 190 Okla. 164, 121 P. 2d 566, as follows:

" ' Where a grantor in a deed is incapable of comprehending that the effect of a deed, when executed and delivered, would be to divest such grantor of title to the land described in such deed, said grantor is, as to such deed, entirely without understanding within the meaning of section 9402, O.S. 1931, 15 Okla. St. Ann. §22, and the deed is void and conveys no rights to the grantee.' "

We have carefully examined the entire voluminous record in the instant case and it discloses the following fact situation: In 1926 Whit Carroll, a widower, 68 years of age and the father of seven adult children, two men and five women, married a woman 40 years

his junior and one year younger than his youngest child. At that time he was a reasonably prosperous man, owning a cotton gin, a home and 320 acres of land in Carter county, 290 acres of land in Love county, together with livestock and other personal property. During the years following, the gin burned, a part of the oil royalty was sold for $500, and by 1943 he had become destitute. Of this second marriage three living children were born, ranging in age, at the time of the trial, from nine to eighteen years. Of all his older children, only two made any attempt to be of assistance to their father or to associate with him after the latter marriage. The defendant was very attentive, helping to manage the property and being accessible at all times when his father needed him. The oldest daughter, Cora Hughes, did those things indicative of respect and affection and, at the time of the trial, had moved from New Mexico to her father's home in order to care for him, his wife having divorced him in October, 1945. Mrs. Hughes' testimony alone would have been sufficient to support the trial court's finding of the entire absence of the alleged fraud and duress.

In February, 1943, the Love county land had lost its agricultural value by exhaustion and erosion, and had very little mineral value other than the rentals of some $145 annually on an oil lease executed in 1935. At that time taxes on the 290 acres in said Love county were delinquent in approximately the amount of $400. Whit Carroll tried to sell the farm but was unsuccessful. After discussing the matter at length with his wife they decided to deed it to the defendant, Mitchell Carroll, if he would pay these taxes. This he agreed to do and the land was conveyed to him.

The same situation existed as to the Carter county land, and in October, 1943, they conveyed to Mitchell Carroll the 166 acres involved herein subject to the payment of taxes amounting to some $225, retaining 152 acres on which

their home was located. Both of these deeds were executed as the result of extensive discussions and forethought on the part of the grantors in the absence of the grantee. Both were discussed with their lawyer upon whose advice they had relied for many years. The one here involved, after being executed in the lawyer's office was taken to defendant's son who delivered it to his father the next week. After the execution of the deeds, the defendant turned over to his father all rentals received from the oil lease and from the crops. Then, some two years later, in August, 1945, representatives of the defendant Mid-Continent Petroleum Corporation contacted Whit Carroll with reference to obtaining an oil and gas lease. After several days of negotiating Whit Carroll agreed to and did execute a lease on 80 acres of the 150 he still owned and occupied as a homestead from which he received $800. As a part of the same activity, this company obtained a lease from Mitchell Carroll on a part of the tract theretofore conveyed to him for $1,200, being the same price per acre as was paid his father. However, before the title of Mitchell Carroll was approved, it was necessary for him to get a deed from his father and stepmother correcting the description in the original conveyance. This was a warranty deed dated August 28, 1945.

Shortly thereafter, the other children, for the first time, became quite interested and active. The other son had his father declared incompetent and had himself appointed guardian in February, 1946. A contract was made with attorneys to attempt to recover the lands and the above mentioned $1,200, upon a contingent fee basis. This action was then instituted. Testimony was introduced of numerous occasions on which plaintiff's mind would wander and occasionally his conversation would be about nonexistent facts. At times his memory was bad and he failed to recognize some of his children when they would visit him. A doctor who ex-

amined him about the time of the trial, but who had not seen him previously for some eight years, testified as to his then condition being one of incompetency. In answer to a hypothetical question he answered that in his opinion the plaintiff was incompetent in 1943.

As against this, the testimony showed that plaintiff had a very severe and incapacitating change when his wife was granted a divorce in October, 1945. Previous to that time his mind was normal most of the time. His actions concerning the lease negotiated in August and September, 1945, indicate the mind of a sound, shrewd business man. He secured a much larger bonus for its execution than practically all other lessors in that field. The testimony of his attorneys, whom he consulted about the execution of the deeds in 1943, and that of his wife, the notary public, and the defendant, being all the persons present at that time, shows that he knew well the nature and effect of those deeds. Numerous witnesses testified as to his competency in business matters, most of them knowing of his tendency at times toward hallucinations and lack of memory. He and his wife had very extended discussions on how the money could be secured to pay the taxes. True, they had an income of some $300 a year from the oil lease on the land, but that was the only revenue they had for the support of themselves and three minor children. That it could be used to pay the taxes on one of the farms is of little importance when it had to be used for the family's sustenance.

The trial court's judgment is against the clear weight of the evidence unless the conclusion reached in the following finding of fact No. 12 is correct:

"Twelfth, the court finds from this one act alone that Whit Carroll in conveying some four hundred fifty-five acres of land to his son Mitchell Carroll upon his agreement to pay the taxes was a foolish act which in itself indicates a lack of mental capacity and the loss of business judgment which

Whit Carroll had exercised in normal years."

We do not agree therewith.

In First Nat. Bank of Enid v. Headrick, supra, the grantor conveyed $30,000 worth of property having an income in excess of all her needs, to her son, in consideration of his supporting her the remainder of her life. The court there held, and rightly so, that such was a foolish act. But, in the instant case, can it be said that a person acts foolishly if he owns two farms upon which taxes are delinquent in an amount in excess of his gross annual income, which is itself insufficient to support his family, and he can find no purchaser therefor, and, after several weeks of discussion about it with his wife, he decides to keep the property in the family by conveying it to the son who through the years has assisted him at any time requested, reserving, however, for himself, his homestead of 152 acres with the house thereon?

We think the instant case comes clearly within the reasoning in the case of Canfield v. Canfield, 167 Okla. 595, 31 P. 2d 149. Therein this court quoted from 4 R.C.L. p. 503, art. 17, as follows:

" 'It is the general consensus of judicial opinion that mental incapacity, whether it be due to mere weakness of mind or actual insanity, is not in itself a sufficient basis for obtaining the cancellation of a written instrument, unless the state of idiocy or imbecility complained of is such that it rendered the afflicted individual incapable of understanding the nature and effect of the transaction at the time the instrument was executed.' "

A marked analogy between the two cases is shown by the following paragraph:

"Certain other testimony was offered showing that, on various occasions after the execution of the conveyances in question, C. N. Canfield knew the

318

results of such conveyances and recognized them as binding."

The burden of proving the alleged incapacity of the grantor rested upon the plaintiff. Antle v. Hartman, 193 Okla. 524, 145 P. 2d 756. The record does not disclose facts sufficient to overcome the presumption of validity of the deed herein attacked. The mental condition of the grantor at the time of the execution of the first deed, October, 1943, is the important thing because title passed at that time if the conveyance was valid; the subsequent deed of August, 1945, being merely for the purpose of correcting the description in the former deed.

The judgment is reversed and the cause remanded, with instructions to enter judgment quieting defendant's title to the real estate involved.

HURST, C.J., and WELCH, GIBSON, and ARNOLD, JJ., concur. CORN, J., dissents.